State your name and your appearance for the record. Russell Davis for appellants. All right, and do you want to reserve any time for rebuttal? Yes, I would like to reserve five minutes for rebuttal. All right, go ahead. The district court got the law wrong when it concluded that the plaintiffs failed to demonstrate they suffered irreparable harm or that the balance of equities tilts in their favor. The district court also erred in its factual finding that allowing the appellants to work remotely would impact the health and welfare of the public. That finding was clearly erroneous unless one believes that COVID can be transmitted through a telephone line or through a Wi-Fi connection. In cases concerning constitutional and statutory civil rights where injunctive relief is available, the presumption of irreparable harm still applies. The district court ignored this well-established law. This case concerns the denial of the appellants' rights under Title VII. Well, let me ask you this because it seems that the irreparable harm prong is quite crucial here. And does federal or state law or both govern whether the plaintiffs have made the requisite showing of irreparable harm, given that the plaintiffs have brought a state FEHA claim as well as a Title VII claim? I would note that it appears that the plaintiffs only argue indirectly that state law governs. In a one-page section of their opening brief, which is titled, The District Court Also Failed to Analyze California Law and FEHA, in which cites one California court of appeal case, Costa Mesa, versus, well, that Costa Mesa case. So what law applies here? Both, both federal and state law. As regard to the FEHA claim, there are other cases that support. I'm talking about the irreparable harm prong. Yes, there are other cases. In California, Barajas v. City of Anaheim, which is 15 Cal. App. 4th, 1808, jump site 1812. There's the Costa Mesa case, which we cited. There's Robinson v. Jardine Insurance Brokers, 856 F. Sub. 554, 559. The history of cases after winter show that the presumption of irreparable harm still applies to federal matters. Before you get there, so on the state law claim, are you saying that we could reverse and order the preliminary injunction purely on state law grounds? You can. Okay. And the reason why you would say that is because cases like Barajas and Costa Mesa suggest that there's a lower standard of irreparable harm than under the Ninth Circuit precedent? Yes, and there's also a lower standard in order to obtain a preliminary injunction. The California Supreme Court, in the case of Butt v. State of California, which is 4 Cal. 4th, 668, jump site 678, the court analyzed a preliminary injunction, and there's only two interrelated factors under California law. The likelihood that the plaintiff will prevail on the merits and the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief. So, yes, the court, there's not a word about FEHA or California law in the court's order. Go ahead, Judge Paulson. Mr. Davis, I tend to agree with you that it appears that California, the state law of California, has a different standard than the federal standard for a preliminary injunction. It's a lower bar in my view. But the significant question here is whether or not this is a procedural rule for which federal law applies and we have to apply only the federal standard for a preliminary injunction, the standard that set out in Winters. And it seems like federal law says this is a procedural issue and it's a federal standard for a preliminary injunction, not an alternative lesser state standard. What California cases or what federal cases suggest that the California standard can be applied in federal court for a preliminary injunction? Good question, Your Honor. And let me get the quayside for you, which that would be the Robinson v. Jardine Insurance Brokers, 856 F-Sub, 554 Jumpsite, 559. It would also be, I think, the Rosso Lino Beverage Distributors, the Coca-Cola Bottling at 749 F-Second, 124 Jumpsite, 125 to 126. I may be a little confused by the question, but my understanding is federal law would apply to the federal claim and state law, which is our FEHA claim is a pendant state claim, and state law should apply to that claim. Well, that certainly would be the case when we get to the ultimate decision on the merits or when a fact finder gets to the ultimate decision on the merits. But this has to do with whether or not the standard for a preliminary injunction in federal court has to meet the federal standards rather than alternatively a lower state standard. That's my question. Okay. Well, we meet the federal standard. Well, that still doesn't quite answer the question. Because on the irreparable harm, okay, we can talk about whether you meet the federal standard or not, but the question is does state law or federal law control when we evaluate the irreparable harm prong? I would imagine that we're in federal court and federal law would apply. My understanding, and tell me if I'm wrong, that we would apply the winter factors because that's federal procedural law on how to enact or get a preliminary injunction, but we look to state law to determine how those factors are substantively applied. So while we put the four federal factors, winter factors, we apply state law on what is an irreparable harm. Well, an irreparable harm is one that can't be addressed by mere money damages. And we meet that standard. Aside from the standard, I'm just wondering procedurally, do you agree that we apply the four winter factors to determine whether or not the preliminary injunction should issue, but when we look at the individual factors such as irreparable harm, we can look to state law on what irreparable harm is? Yes, I agree with that. All right. You didn't really make that argument exactly, I don't think. But perhaps since on the irreparable harm, when you first moved for preliminary injunction, the city's vaccine mandate was still in effect. Now that the city has rescinded its vaccine mandate, your clients could reapply for their old jobs. If your clients want their old jobs back, why haven't they reapplied, and why do you need an injunction? Well, that reapplication is a canard. They would be reapplying as new hires. They would not be getting back their positions that they had prior to the litigation or prior to the mandate being enforced. Is there anything in the record to that effect? They were deposed and simply said they did not seek to get their old jobs back by reapplying after the mandate was issued, I thought. There's nothing exactly on point in the record. My clients have told me through their union representatives. Okay, I think we have to stick with the record. I understand that, Your Honor, but the application process is for new hires. It's not for reinstatement to one's old position. But you agree the record does not reflect what you just said? Correct. Okay, moving on. The easiest part of this case is the public interest. Public interest here is in enforcement of civil rights laws, which is what the appellants are trying to do. The appellee claims there's a public interest because of some generic argument regarding communicable disease, but that argument doesn't apply in this specific case. Did the district court really engage on the merits of your likelihood of success when we sent it back? Not at all. Did the district court do what we asked the district court to do on remand? It did, but its analysis is flawed. Okay. In BST Holdings and Sombrano, the Fifth Circuit found Hobson's choice may constitute irreparable harm, but in those cases, the employees sought preliminary injunctions while they still faced the Hobson's choice. Here, the plaintiffs waited to file a motion for preliminary injunction until after they had resigned. So why aren't BST Holdings and Sombrano distinguishable? Well, the appellants did not resign. They were constructively fired. That's number one. They at all times requested remote accommodation, which was available as a remedy for the Title VII violation. You say that that was available, but isn't that your suggestion that it was still available to people that held that position? The city and county have put into the record evidence that there was a requirement for good reasons that they set out for some face-to-face for all of the employees that held the positions that your clients did. Well, that argument is a sham, and I'll explain why. They state in the record that losing even one or two staff on-site workers had a substantial impact on their ability to provide assistance to their most vulnerable clients. Now, apparently they need a math lesson. How does firing two appellants help an on-site staffing shortage? Removing persons from staff can only make the shortage worse. The appellants never worked on-site during the mandate. Firing them had the effect of burdening the workers at Mission Street with the clients that they were formally handling. The argument that it needed the plaintiffs to work is also undercut by its own claim in the record that there were over 11,000 visits at the Mission Street office. In other words, the Mission Street office functioned very well without the appellants. So by firing the appellants, they either added to the burden they were claiming it needed to reduce, or it had no effect on the burden because the office functioned very well in fact. So you're basically getting down to two minutes. Do you want to reserve the balance of your time for rebuttal? Yes. Okay, thank you. We'll go to your friend on the other side and hear from the city. Good morning. May it please the Court, Don Willenberg of Gordon-Reese for the City and County. This Court's prior ruling addressed three deficiencies in the District Court's initial denial of the preliminary injunction. On remand, the District Court addressed all three, so this Court should now affirm. Did the District Court really do what we told the District Court to do? It seems like the District Court did what the District Court wanted to do. It never engaged on the likelihood of success, and I'm just not sure that the District Court sort of seems to still be guided by the fact that the District Court doesn't really think that the plaintiffs sincerely hold this view. Well, Your Honor, sincerity is the first of the three issues that this Court sent us back on remand for. And your prior decision said that the District Court improperly questioned the sincerity of the belief. But the second District Court decision doesn't address that at all, and doesn't assert or, excuse me, does not address the sincerity of those asserted religious grounds, but rather assumes them. I would agree with the reply brief that the District Court, in essence, concedes that issue and moves to the other two. Wait, so you think that the District Court conceded the likelihood of success with the merits? No, not at all. Well, then what are you talking about? Well, whether they have sincere religious beliefs is only a part of whether they will end up sincere. Well, Judge Callahan's question is the District Court did not address likelihood of success on the merits, correct? It did not specifically address it. I saw them addressing likelihood of success on the merits when the District Court got to the balance of equities. That's a different factor. So, you know, under NYSERDA case law, we have the sliding scale, right? So if there's likelihood of success on the merits, you need a lesser burden of showing reputable harm. And so without likelihood of success on the merits, how can we assess irreparable harm in a vacuum? Well, again, I don't think it's in a vacuum. And this was in response to the three issues that this Court sent it back on, which was less about success on the merits, as I read the Court's order, perhaps I'm wrong. No, you're absolutely right, but we only addressed the issues raised to us. But to order a – to deny a PI, you need to discuss likelihood of success on the merits. Again, I would say that the way that the District Court addressed that was not directly. It would have been in connection with – mostly with the balance of equities on the preliminary injunction, which is something short of saying what are we going – what's going to happen at the end of this case, when the case is fully – Where is this case anyway? Have the parties completed discovery or filed summary judgment motions? I don't know. It seems like it's going – doing the slow walk here, and they're consolidating it with other cases. It doesn't seem like it's going anywhere. Your Honor, they are consolidating it with other cases. There has been discovery in these two cases. Are there summary judgment motions in this case? There are not summary judgment motions pending in these cases. And so there's not a trial date either? I do not believe there's a trial date either. Okay. So in looking at the merits, in support of your arguments regarding undue hardship, you note that the city held over – and I think your friend on the other side mentioned this – over 11,000 in-person client appointments at the Mission Street campus between November 21st and April 23rd. Did the city require each of the clients to be vaccinated before visiting the Mission Street campus? And if the answer is no on that, doesn't that undermine the city's argument that it would have been an undue hardship to permit plaintiffs to work at the Mission Street campus with precautions such as masking and regular testing? Well, that is not – what the city required of clients is not in the record. I don't think that that says – determines whether or not the city – Well, aren't there a lot of unhoused or homeless people that are coming into those appointments? Absolutely. So I'm guessing that they're not all vaccinated. So I'm just wondering, if they don't have to be vaccinated, why do the appellants have to be vaccinated? Well, we don't have necessarily the same control over people who are coming in as we do over the employees. And we ought to be able to – So doesn't that suggest it's all arbitrary? Why can't you control the contagion where you can? If the answer – if the suggestion is that because some of the people – The whole point of their job is to meet with the homeless people that are unvaccinated. It seems arbitrary to just require them to be vaccinated. I don't see it as arbitrary. I see it as one way to reduce the spread of contagion. Because it is – maybe it's more perfect. I think what we're talking about is whether they can be accommodated for their – it was sent back saying they just met the standard that their beliefs were sincere. So could they – and they're claiming that their religious beliefs require certain things of them. And they have declarations to that effect. So what – you know, the accommodations, if you're bringing in a bunch of unvaccinated people, and then you're saying you can't accommodate them to just wear masks and regularly test, it does raise some questions. I suppose the question is, could you have done even more to protect against the spread of COVID? And the answer is yes, at least on this record. Does that mean that what happened here, which was a completely religion-neutral regulation for the common good, somehow that became insufficient or unconstitutional? That seems quite a leap. Mr. Willenberg, going back to the issue of accommodation, I thought the record was silent as to whether or not there was ever an engagement on accommodation. What the record reflects is they applied for and were denied a religious accommodation, not that they applied for and were denied because they couldn't be accommodated. I know Mr. Davis is talking about what he thinks the reasonable accommodation should have been, but I thought that step either had never been reached, or the record simply does not reflect that that step was ever reached, that it was simply, we deny your request for a religious accommodation. On page 176 of the excerpts of record is the determination on the vaccine exemption request, which denied the religious belief request on three grounds. Documentation insufficient to show a conflict. Accommodation would pose a direct threat to the health and safety of others and or yourself, and accommodation would result in undue hardship for the city. Where is the hardship for the city? The hardship for the city is that it has a small office dealing with all of these people. Appellants have pointed out that the city and county has a $14 billion annual budget, but we're not talking about the entire city and county and its $14 billion budget. We're talking about a small office of 20 to 30 people dealing with 11 or 12,000 in-person visits. Do we assess that question under the time that they were fired or constructively discharged, or do we assess it as the state of the record now, which is that the vaccine mandate has been lifted by the city? I think you have to do it at the time that the actions took place.  Well, because that's the basis of their initial complaint. They said they were put in a bad position because of that then, not because of where we are now. But couldn't we take additional notice of the facts that are very clearly established that the vaccine mandate has been lifted? Oh, you absolutely can take notice of that. That's absolutely right. It seems that the district court, though, when with respect to the third and fourth winter factors, it seems that the district court failed to consider the changed circumstances that the pandemic had ended and the city had rescinded the vaccine mandate. Given that the city no longer requires its employees to be vaccinated, how would it be harmed if plaintiffs' employment were to be reinstated today? Well, one question to that is, so what will we do? What employees are we supposed to fire and bump to bring these people back in when the prior employees complied with the mandate, continued to work during the pandemic, continued to be available for in-person as well as remote assignments? But were these prior employees that were claiming a religious exemption? I can't answer that. That is not in the record. Well, no, I think you could answer that. I mean, that if people didn't claim an exemption and they chose and they got vaccinated and they worked, that's not, you can't say that they're in the same position as these two present plaintiffs, can you? They are not in the same position. They fulfilled the vaccine mandate. They kept working. Well, under your theory, they would not suffer any irreparable harm if you bumped them, right? Pardon me? Under your theory, they would not suffer any irreparable harm if you displaced them, right? The additionally displaced people would not have grounds for an injunction. I agree with that. Right. They would have grounds. Well, they would have grounds for money damages just like the appellants in this case. Just like employment plaintiffs in almost every other case. Counsel, can I ask, do you agree that the district court could have issued an injunction purely on state law grounds? No, I would see this as even a Costa Mesa situation. Before you get there, just answer that question. Theoretically, no, because I think that an injunction is a procedural issue or in federal court, so it's a federal issue. Wait, so you can never issue a preliminary injunction based on state law grounds if it has supplementary jurisdiction? That can't be right under diversity jurisdiction, right? It can't be right under diversity, but we aren't there, right? Yeah, we're in supplemental, so you're saying something about supplemental jurisdiction is different, that federal courts can't issue preliminary injunctions on state court grounds. Well, and I guess I have a similar but the mirror position of Mr. Davis, and that I think that it's justified under both, and he thinks it's justified underneath. Okay. I think you have to concede that I think federal courts can issue preliminary injunctions based on state law, unless you have a case that says otherwise. No, I do not.  So then let's go to that. So assuming that irreparable harm is one of the winter factors that we can look to state law to, do you agree that California has a lower burden for irreparable harm? I certainly don't see that in the Costa Mesa case because there was exactly irreparable harm. The whole issue there was are they going to outsource jobs to a private entity? Yeah. If that happened, it was, at least the court found, that would not be reversible. You could not undo that. Yeah, the job termination. Isn't that the whole? And the issue there is that they were being terminated. Yes, and here our client, our appellants resigned. Mr. Davis said, well, they didn't really resign. They were constructively terminated. But they actually resigned. They're getting retirement benefits, presumably. And they said in their own depositions that they resigned. They said they resigned because they felt forced to. They felt forced because there was a choice they had to make. Well, so you would agree, then, under California law, if they were terminated then that would be irreparable harm? No, because I think if they had been terminated, like every other employment plaintiff, they would be able to recover in damages. Well, that's kind of what Costa Mesa said. And there's barajas about the food trucks, preventing food trucks would lead to the destruction of their livelihoods. That was considered irreparable harm under California law?  So destruction of livelihood would be considered irreparable harm under California law? Well, and there wasn't a destruction of livelihood here in that, this case is not like shock or Fenyard or even Featherstone, where people were deprived of the right to an entire field of activity, being a lawyer or being a special ed teacher. Here, nothing is preventing these appellants from continuing careers in what they call helping people in need, which is a great career path and a noble thing to do. I mean, that's terrific. And they don't have any, there's nothing preventing them from doing that. They felt that goal was satisfied in other positions. They haven't even applied for another job. How can they say it's irreparable harm if they haven't even applied for another job in that? They haven't applied to get this one back now that there is no mandate and there's nothing in the record about whether they would come in as a new hire and end up getting their job back. Mere loss of income isn't enough. As Samson v. Murray says, that could be compensated in damages. So, the one other thing I would like to make sure I mention here is, so the court addressed sincerity, it addressed irreparable harm, it addressed balance of equities, and the district court's ruling on balance of equities just can't be an abuse of discretion. They say, the injury sustained by plaintiffs and alleged abrogation of their religious freedom resulting in loss of employment and financial injuries does not away the possible damage of increased COVID-19 spread of the community. You can agree with that, you can disagree with that. Unless any of the panel members have additional questions, you're a minute and a half over time. Do either of my colleagues have additional questions?  Judge Bumate? No. All right, then just wrap it up in 15 seconds. This court sent the matter back to the district court to address three issues. The district court addressed those three issues. This court should affirm. Thank you. All right, and we'll go back to the appellant. I'll give you three minutes for rebuttal. I'll give you a little extra time since we took the colleague on the other side over, so you can have three minutes. Thank you very much. Discovery was mentioned. The appellants were not allowed to conduct discovery. The appellees moved for an order to take the depositions of the appellants. I copied the exact language in their motion, and yet we were denied discovery rights. Regarding their small office comment, the bottom line is they still have failed to show us any gross factors. There's no analysis of the cost of accommodating the plaintiffs, none whatsoever. Now, there wouldn't have been a problem, we wouldn't have a case, if the accommodation was granted ab initio. There's no increase in harm to the appellee, if the appellants are working 45 miles away in another county. This idea that they would be harmed is ridiculous. You can't get COVID over a telephone line or through a Wi-Fi network. But Mr. Davis, that assumes something that the appellants have said, that the city said they could not do that accommodation. I mean, I don't think it's up to us to define the accommodation and say to the city, oh, these two people, that's a valid accommodation for them. Perhaps there's other accommodations that could have been made for their religious beliefs, but you have suggested that what they propose is the appropriate accommodation and can easily be done and they don't have to ever come into the office during the pandemic. I don't know how we make that decision when it's up to the city to determine and weigh whether they can accommodate the requests of the plaintiffs. Well, I think it's highly inferred from the facts of the case. The appellants were, in fact, working for a year and a half remotely. They were working from, I believe, March of 2020 through November 1st of 2021 remotely. What we're saying is there's no reason why they could not have continued to work remotely as an accommodation. There was also other accommodations that were suggested, which was wearing PPE and testing often. There was also the accommodation of paid leave or unpaid leave. So there were four different accommodations available, and the appellee failed to engage in any meaningful meet and confer with the appellants regarding what accommodations were necessary. So we're suggesting something that's right in the record and something the court can very easily infer from the fact of their working a year and a half remotely. All right. Your time has expired. Unless my colleagues have additional questions, that would conclude argument. No. All right. No additional questions. Thank you both for your argument today, and this matter will stand submitted. This court's in recess. Thank you very much. Have a great day. All rise. Thank you. This court shall stand in recess. Thank you.
judges: CALLAHAN, BUMATAY, Bolton